**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **ALI NADZHAFALIYEV, et al.** | ) | |
| | ) | |
| **Plaintiffs,** | ) | **Case No. 17 C 4469** |
| | ) | |
| **v.** | ) | |
| | ) | **Judge Jorge L. Alonso** |
| **DANIEL HARDY, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Defendants move to dismiss this case on *Younger* abstention grounds, *see Younger v. Harris*, 401 U.S. 37 (1971). For the following reasons, the motion is granted.

### I.    Background

Plaintiffs, Ali Nadzhafaliyev, Sean Gunderson, Paul Olsson, Abby Grason, James Baker, Mark Owens, and Daniel Padilla, have been involuntarily committed to the custody of the Illinois Department of Human Services and confined at Elgin Mental Health Center ("EMHC"), after a state court found them either not guilty by reason of insanity ("NGRI") or unfit to stand trial ("UST") on criminal charges. Plaintiffs challenge the constitutionality of EMHC's "loss of privileges" ("LOP") disciplinary policy, alleging that defendants, employees of EMHC, took advantage of the policy to violate plaintiffs' due process rights.

Plaintiffs allege that, in an effort to "incorporate therapeutic methods," EMHC has adopted a "coercion-free environment," in which patients are governed not according to a system of rules and punishment but according to a set of "expectations." (2d Am. Compl. ¶ 28, ECF No. 38.) The posted "Environmental Expectations" are as follow:

    (a) We are expected to practice respect and dignity for other patients and staff—which include no violence or fighting and no foul language.

    (b) We are expected to adhere to safety practices which maintain the safety of all patients and staff.

    (c) We are expected to maintain and respect the environment which includes no destruction of [any] other's property and keeping our living spaces and working spaces clean.

    (d) We are expected to take care of our own property and not to borrow, lend, share, or give things away—which includes any other personal items.

    (e) We are expected to keep ourselves appropriately clean, groomed, and dressed both on and off the unit.

(*Id.* ¶ 29.) If an EMHC staff member "determines in his or her sole discretion" that a patient is not meeting the community's "expectations," the staff member can place the patient on LOP status.

(*Id.* ¶ 32.) The consequences of being put on LOP status may include the following:

    (a) No vending, pop time, or snack box.

    (b) No order out the following week.

    (c) No gym time

    (d) No library

    (e) No 1-South

    (f) May attend all structured groups off unit. Must be escorted by staff.

(*Id.* ¶ 33.) Additionally, a patient on LOP status may be prohibited from certain "treatment activities" including "physically active treatment." (*Id.* ¶ 34.)

      Placement on LOP status is documented in the patient's medical chart, and plaintiffs allege that it can affect whether they are issued "Pass Privileges," which permit them to travel around and off the EMHC campus. (2d Am. Compl. ¶ 36; *see id.* ¶ 47.) NGRI and UST patients generally must be held in a "secure setting," and any loosening of restrictions on their security, in the form of off-grounds or unsupervised on-grounds privileges, must be approved by court order, which "may include such conditions on the defendant as the Court may deem appropriate and necessary to reasonably assure the defendant's satisfactory progress in treatment and the safety of the defendant and others." *See* 730 ILCS 5/5-2-4(b) (NGRI); 725 ILCS 5/104-31 (UST). Every ninety days, EMHC must file a "treatment plan report" with the supervising court, which must "provide

a current summary" of progress on the items covered by the patient's treatment plan.[1]  730 ILCS 5/5-2-4(b) (NGRI); 725 ILCS 5/104-25(g)(2) (UST). The report may also recommend off-grounds privileges or unsupervised on-grounds privileges for the court's consideration and approval.  730 ILCS 5/5-2-4(b); 725 ILCS 5/104-31.  For a UST patient, the supervising court is to set a hearing, with notice to the defendant and his attorney, every 180 days to review the progress of the patient's treatment. 725 ILCS 5/104-25(g)(2).  An NGRI patient has the right to file a "petition for treatment plan review" every 180 days, upon which the supervising court "shall set a hearing to be held within 120 days."  730 ILCS 5/5-2-4(e).

At court hearings, LOP status can be—and, allegedly, "regularly is"—the basis of denial of a conditional release, *see* 725 ILCS 5/104-25(g)(2); 730 ILCS 5/5-2-4, or of pass privileges for EMHC patients.  (2d Am. Compl. ¶ 38; *see id.* ¶ 47.)  Plaintiffs allege that the "review process" for LOP status is "grossly lacking," "ineffective," and "futile," and they have "presented Defendants with numerous . . . grievances pertaining to the . . . LOP system" (*id.* ¶¶ 43, 56; *see id.* ¶ 52), but nothing has changed.

Plaintiffs each describe specific incidents in which they were put on LOP status arbitrarily, unjustly, or based on false accusations of wrongdoing. For example, Nadzhafaliyev was put on LOP status for restraining another patient during a soccer game, but only after the other patient tried to punch him; Baker was accused of surreptitiously passing contraband to Nadzhafaliyev, but they were only conversing; Gunderson was accused of keeping contraband food items, despite no notice that keeping the food in his room was wrongful; Olsson was blamed for an insect infestation

---

[1] For each patient in its custody, EMHC is required to prepare a "treatment plan," which must include "(1) an assessment of the defendant's treatment needs, (2) a description of the services recommended for treatment, (3) the goals of each type of element of service, (4) an anticipated timetable for the accomplishment of the goals, and (5) a designation of the qualified professional responsible for the implementation of the plan."  730 ILCS 5/5-2-4(b); *see* 725 ILCS 5/104-25(g)(2).

in his room that he did not cause; Owens was blamed for an unprovoked attack on him by another patient; and Padilla was blamed for not knowing the expectations, despite his learning disabilities. Plaintiffs allege that they were denied pass privileges or conditional releases based in part on these LOP incidents and others, as documented in their medical records. In some cases, plaintiffs suffered other harmful or demeaning consequences. For example, Baker and Nadzhafaliyev were strip searched in the incident concerning the alleged passing of contraband, and Nadzhafaliyev, Baker, Gunderson, and Olsson were deprived of computer equipment, at least temporarily, sometimes as a consequence of their LOP status, sometimes after searches by EMHC staff.

## II. Legal Standards for Rule 12 Motion to Dismiss

Defendants move to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) and (6). "Both a Rule 12(b)(6) motion and a Rule 12(b)(1) motion share the same purpose: not to decide the merits of the case, but to test the sufficiency of the complaint." *O'Pere v. Citimortgage Bank, N.A.*, No. 14-CV-10230, 2015 WL 6859289, at *1 (N.D. Ill. Nov. 9, 2015).

A motion under Federal Rule of Civil Procedure 12(b)(6) tests whether the complaint states a claim on which relief may be granted. *Richards v. Mitcheff*, 696 F.3d 635, 637 (7th Cir. 2012). Under Rule 8(a)(2), a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The short and plain statement under Rule 8(a)(2) must "'give the defendant fair notice of what . . . the claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). The complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level," *Twombly*, 550 U.S. at 555; that is, the "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has

facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

"In reviewing the sufficiency of a complaint under the plausibility standard, [courts must] accept the well-pleaded facts in the complaint as true, but [they] 'need[ ] not accept as true legal conclusions, or threadbare recitals of the elements of a cause of action, supported by mere conclusory statements.'" *Alam v. Miller Brewing Co.*, 709 F.3d 662, 665-66 (7th Cir. 2013) (quoting *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009)). "Only when the plaintiff pleads itself out of court—that is, admits all the ingredients of an impenetrable defense—may a complaint that otherwise states a claim be dismissed under Rule 12(b)(6)." *Xechem, Inc. v. Bristol-Myers Squibb Co.*, 372 F.3d 899, 901 (7th Cir. 2004).

"A motion to dismiss on abstention grounds does not fit neatly into Rule 12(b)(1) or Rule 12(b)(6)," but when such a motion "asks the Court to decline jurisdiction," as defendants' motion does, "it fits more comfortably under Rule 12(b)(1)." *Bolton v. Bryant*, 71 F. Supp. 3d 802, 809 n.2 (N.D. Ill. 2014); *see also Powell v. Saddler,* No. 12 C 2928, 2012 WL 3880198, at *3 (N.D. Ill. Sept. 6, 2012) ("Because *Younger* abstention concerns whether courts should exercise jurisdiction that they have over the parties' claims, motions to dismiss on *Younger* grounds are best construed as motions pursuant to Federal Rule of Civil Procedure 12(b)(1) to dismiss for lack of subject matter jurisdiction."). "A Rule 12(b)(1) motion seeks dismissal of an action over which a court allegedly lacks subject matter jurisdiction." *O'Pere*, 2015 WL 6859289, at *2. The Court analyzes the motion the same way it analyzes Rule 12(b)(6) motions, accepting as true plaintiffs' allegations and drawing reasonable inferences in their favor, except that it may "'look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the

issue'" to determine whether the Court may exercise subject-matter jurisdiction. *See id.* (quoting *Long v. Shorebank Dev. Corp.*, 182 F.3d 548, 554 (7th Cir. 1999)).

## III. Analysis

Plaintiffs claim that defendants violated their constitutional right to due process by arbitrarily punishing them under the LOP system and denying them access to adequate medical care. In response, defendants argue that (1) plaintiffs fail to state a claim rising to the level of a constitutional deprivation, and (2) even if plaintiffs do state a claim, this Court must abstain from adjudicating it under *Younger v. Harris*, 401 U.S. 37 (1971). The Court will address the *Younger* argument first. *See Yassan v. J.P. Morgan Chase & Co.*, 708 F.3d 963, 967 n.1 (7th Cir. 2013) ("[I]t [is] improper for courts to skip over jurisdictional issues in order to reach the merits, even when 'the merits question is more easily resolved.'") (quoting *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 93-94 (1998)).

"*Younger* generally requires federal courts to abstain from taking jurisdiction over federal constitutional claims that involve or call into question ongoing state proceedings." *FreeEats.com, Inc. v. Indiana*, 502 F.3d 590, 595 (7th Cir. 2007). "'The rule in *Younger* . . . is designed to permit state courts to try state cases free from interference by federal courts.'" *Id.* (quoting *Forty One News, Inc. v. Cty. of Lake*, 491 F.3d 662, 665 (7th Cir. 2007)). Under the *Younger* doctrine, "a party to a state proceeding affecting important governmental interests must resolve the dispute in the state's preferred tribunal," *Nelson v. Murphy*, 44 F.3d 497, 501 (7th Cir. 1995), rather than by filing a conflicting federal lawsuit. The Seventh Circuit has explained the principles undergirding the doctrine as follows:

> In *Younger,* the Supreme Court held that absent extraordinary circumstances federal courts should abstain from enjoining ongoing state criminal proceedings. 401 U.S. at 53. That holding rested partly on traditional principles of equity, but was based primarily on the "even more vital consideration" of comity. *Id.* at 44.

> Comity refers to "a proper respect for state functions, a recognition of the fact that the entire country is made up of a Union of separate state governments, and a continuance of the belief that the National Government will fare best if the States and their institutions are left free to perform their separate functions in their separate ways." *Id.* The Court has extended the holding in *Younger* to cases in which the relief requested was something other than an injunction in state court. *See, e.g., Samuels v. Mackell,* 401 U.S. 66 (1971) (abstention appropriate when relief sought is a declaratory judgment, which would have same disruptive effect on state proceedings as an injunction).

*Simpson v. Rowan*, 73 F.3d 134, 137 (7th Cir. 1995) (internal citations altered) (extending *Younger* to § 1983 civil rights action seeking "damages for misconduct in an underlying [state] criminal case").

A district court's decision to abstain under *Younger* "'does not rest on a mechanical checklist, but on a careful balancing of the important factors as they apply in a given case.'" *Barichello v. McDonald*, 98 F.3d 948, 955 (7th Cir. 1996). The Seventh Circuit has identified three "paramount concerns" on which courts must focus their analysis in deciding whether to abstain:

> (1) the judicial or judicial in nature state proceedings must be on-going;
> (2) the proceedings must implicate important state interests; and
> (3) there must be an adequate opportunity in the state court proceeding to raise constitutional challenges.

*Id*. "When confronted with circumstances that clearly implicate *Younger* concerns, a federal court *must* abstain." *Id.* (emphasis added).

In May 1990, after two patients caused a security crisis by escaping while traveling on off-grounds passes, EMHC canceled all off-grounds passes and curtailed unescorted on-grounds movement for all patients. Both NGRI and UST patients filed § 1983 lawsuits in federal court, challenging the policy as arbitrary and violative of due process and seeking damages. In both cases, citing the *Younger* doctrine, the Seventh Circuit affirmed the district courts' decisions to

abstain. *See Barichello*, 98 F.3d at 951, 954-56;[2] *Nelson*, 44 F.3d at 499, 501-03. In both cases, the Seventh Circuit reasoned that the plaintiffs were subject to ongoing state proceedings, namely, the criminal cases filed against them; although these cases were not proceeding as such, the plaintiffs' confinement was subject to supervision by the criminal courts, and the state was required to file regular treatment-plan reports for the state judges' information and approval. *Barichello*, 98 F.3d at 955; *Nelson*, 44 F.3d at 501-02; *see* 730 ILCS 5/5-2-4(b); 725 ILCS 5/104-25(g)(2). The proceedings implicated important state interests, having grown out of criminal charges. *Barichello*, 98 F.3d at 955; *Nelson*, 44 F.3d at 501-02. And in both cases, the court concluded that there was adequate opportunity in the state proceedings for the plaintiffs to raise their constitutional issues. *Barichello*, 98 F.3d at 956 ("[I]n the spirit of the abstention cases cited above, we defer to the capacity of the state court to accord to the plaintiffs the constitutional relief (if any) to which they are entitled.");[3] *Nelson*, 44 F.3d at 499, 501-03 ("No one doubts that the state courts had jurisdiction to consider the precise constitutional claims that have been raised in this litigation. . . . Instead of presenting objections to treatment plans, plaintiffs filed an independent suit in federal court.").

Defendants argue that this case calls for *Younger* abstention no less than *Nelson*, and the Court agrees. *Nelson* and, to a lesser extent, *Barichello* control the outcome of this case. In this

---

[2] In *Barichello*, the district court abstained only from the injunctive claims; it granted summary judgment on the damages claims on qualified immunity grounds. The Seventh Circuit affirmed the decision in all respects.

[3] In *Barichello*, the Seventh Circuit admitted to some uneasiness about the degree of process available in the state system, observing that in *People v. Owens*, 645 N.E.2d 483 (Ill. App. Ct. 1994), the Illinois Appellate Court had held that an NGRI inmate had no right to a hearing on a petition to modify his treatment plan to include unaccompanied on-grounds passes. *Barichello*, 98 F.3d at 956. This uneasiness might have given this Court pause, except that the statute has been amended since *Barichello* and *Owens*. It now explicitly provides that the supervising state court "shall" set a hearing within 120 days on an NGRI inmate's "petition for treatment plan review." *See* Public Act 91–536, 1999 Ill. Legis. Serv. P.A. 91-536 (S.B. 849) (amending 730 ILCS 5/5-2-4(e) to add "treatment plan review" as a basis for a petition requiring a hearing).

case, as in those cases, NGRI or UST patients at EMHC are objecting essentially to EMHC's arbitrary or unjust denial of certain passes to move about or off the EMHC campus unsupervised. At the core of plaintiffs' complaint about the LOP system is that it results in the denial of such passes, due to the documentation of LOP incidents in plaintiffs' medical charts, which in turn makes a negative impression on the supervising state court. This is the sort of claim, rooted in the denial of off-grounds or unsupervised on-grounds passes, that the Seventh Circuit held to require *Younger* abstention in *Nelson* and *Barichello*.

In response, plaintiffs argue that they are challenging the LOP system itself, not the state court's review of the treatment plans submitted to it. First, the Court doubts whether that argument is consistent with the allegations of the complaint, which plainly connect the decisions the state court makes with respect to approval of plaintiffs' treatment plans, particularly concerning plaintiffs' privilege passes, conditional releases, and the like, to the challenged LOP incidents. (*See, e.g.,* 2d Am. Compl. ¶¶ 36, 38, 47.) Second, and more importantly, the distinction is one without a difference. The LOP system is integral to the treatment process, and plaintiffs do not and cannot dispute that the conditions of plaintiffs' confinement are subject to state-court supervision, to the extent that they impact the treatment process. Plaintiffs themselves allege that the LOP disciplinary system is part and parcel of EMHC's "coercion-free" environment, which intentionally "incorporate[s] therapeutic methods." (*Id.* ¶ 28; *see id.* ¶¶ 28-31, 39.) In other words, the LOP system is EMHC's means of enforcing its system of "expectations," and EMHC has imposed both systems for a "therapeutic" purpose. (*Id.*) There is no meaningful distinction between, on the one hand, objecting to the treatment plans submitted for the state court's approval and, on the other hand, objecting to the LOP incidents documented in the medical records

submitted in support of those treatment plans; either way, the objection is essentially to the court-approved plans for treatment of the patients.

Illustrating the point is *Gunderson v. Pharis*, No. 13-CV-3792, 2014 WL 1613051, at *4 (N.D. Ill. Apr. 22, 2014) (St. Eve, J.), in which the plaintiff Sean Gunderson—also one of the plaintiffs in this case—asserted claims arising out of EMHC's allegedly unconstitutional restrictions on certain activities, including computer-facilitated university coursework, conjugal visitation, and yoga and meditation time. The district court dismissed these claims, agreeing with the defendants that they "involve conditions appropriate and necessary to reasonably assure the Plaintiff's satisfactory progress in treatment and the safety of himself and others." *Id.* at *4. Because these conditions-of-confinement claims overlapped with ground covered by the state-court-supervised treatment plans, they were "not properly before [the federal district court] pursuant to *Younger*." *Id.*

This case is no different. Plaintiffs' claims arise out of conditions of their confinement that are subject to ongoing supervision by an Illinois court under Illinois law. Under the *Younger* doctrine, as the Seventh Circuit has explained in *Nelson* and *Barichello*, this Court must abstain from hearing such claims.

The Court need not reach the parties' arguments concerning whether plaintiffs state a claim for violation of their due process rights. Even if they do, this Court must abstain from hearing it. Accordingly, plaintiffs' complaint is dismissed without prejudice.

**IV.    Conclusion**

The Court grants defendants' motion to dismiss pursuant to the *Younger* abstention doctrine, *see Younger v. Harris*, 401 U.S. 37 (1971).  Plaintiffs' complaint is dismissed, without prejudice to re-raising their claims before an appropriate Illinois court.  Civil case terminated.


**SO ORDERED.**                                          **ENTERED: August 29, 2019**

_____
**HON. JORGE ALONSO**
**United States District Judge**